**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Target Corporation, *et al.*, | Civil Action No. 13-cv-3477 (AKH) |
| Plaintiffs, | ECF Case |
| v. | |
| Visa, Inc., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

CLARICK GUERON REISBAUM LLP
40 West 25th Street
New York, New York 10010
(212) 633-4310

VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-6400

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

    I.     The *Visa Check* Settlement ................................................................... 2

    II.    Proceedings In The *Payment Card* Case ........................................... 3

    III.   The Target Plaintiffs' 2013 Opt-Out Complaint Makes Allegations
          And Seeks Damages For Visa's And MasterCard's Post-2003
          Conduct ......................................................................................... 5

ARGUMENT ..................................................................................................................... 5

    I.     The Courts Construing The *Visa Check* Release Have Judicially
          Determined That The Release Does Not Apply To Claims Based On
          Post-2003 Conduct ...................................................................... 6

    II.    Because *Visa Check* Class Members Had No Notice Of The
          Defendants' Forward-Looking Interpretation Of The Release, An
          Interpretation Of The Release That Bars Post-2003 Claims Would
          Violate Due Process ..................................................................... 9

    III.   The Application Of The *Visa Check* Release To This Case Is Not
          Appropriately Decided On A Motion To Dismiss ............................... 13

    IV.   The *Visa Check* Release Cannot Be Read To Provide Perpetual
          Immunity From Future Claims Of Anticompetitive Conduct That
          Accrued After December 31, 2003 .............................................. 19

CONCLUSION ................................................................................................................. 23

cut off due to length

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) .................................. 14

*Bank of N.Y. Trust Co. v. Franklin Advisers, Inc.*, -- F.3d ---, 2013 U.S. App. LEXIS 15819 (2d Cir. Aug. 1, 2013)....................................................................................... 20, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 14

*Best Foods Int'l, Inc. v. Aerojet-Gen. Corp.*, Nos. 1:89-cv-503, 1:89-cv-961, 2000 U.S. Dist. LEXIS 12712 (W.D. Mich. Aug. 24, 2000)...................................................... 9

*Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) ......................................................... 6

*Brooke Group Ltd. v. JCH Syndicate* 663 N.E.2d 635 (N.Y. 1996).......................................... 21

*Crivera v. City of New York*, No. 03 CV 447, 2004 U.S. Dist. LEXIS 2571 (E.D.N.Y. Feb. 23, 2004) ....................................................................................................... 18

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 421 F.2d 1313 (5th Cir. 1970) ................................................................................................................... 17, 19

*Flying J Inc. v. TA Operating Corp.*, No. 1:06-CV-30-TC, 2008 U.S. Dist. LEXIS 92852 (D. Utah Nov. 14, 2008) ........................................................................................ 22

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509 (2d Cir. 2001)...................................................... 20

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012)...................................... 10

*Hunter Douglas, Inc. v. Comfortex Corp.*, No. 98-CV-0479, 1999 U.S. Dist. LEXIS 10906 (N.D.N.Y. Mar. 11, 1999) ............................................................................... 18, 22

*In re Am. Express Merchants' Litig.)*, 554 F.3d 300 (2d Cir. 2009)........................................... 22

*In re Holocaust Victims Assets Litig.*, 314 F. Supp. 2d 155 (E.D.N.Y. 2004)........................... 10

*In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181 (S.D.N.Y. 2000)...................... 11, 15

*In re OnBank & Trust Co.*, 688 N.E.2d 245 (N.Y. 1997)............................................................ 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008)............................. passim

*In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 507(E.D.N.Y. 2004) ................................................................................................................... passim

*Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) ........................................ 7

*Ital. Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300 (2d Cir. 2009) ................................. 22

*Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334 (S.D.N.Y. 2005) ............................... 8, 9

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955) ........................................... 22

*Madison Square Garden, L.P. v. National Hockey League*, No. 07-CV-8455, 2008 U.S. Dist. LEXIS 80475 (S.D.N.Y. Oct. 10, 2008) ........................................ 17, 18

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 161 F.3d 443 (7th Cir. 1998) ......................................................................................... 18

*Mkt'g Assistance Plan, Inc. v. Assoc. Milk Producers, Inc.*, 338 F. Supp. 1019 (S.D. Tex. 1972) ......................................................................... 20

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 20 (2d Cir. 1981) ................. 11, 12

*Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV 05-6838 CAS (MANx), CV 05-8908 CAS (MANx), 2010 U.S. Dist. LEXIS 113815 (C.D. Cal. Aug. 18, 2010) ................. 11

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ................................................... 7

*Oberweis Dairy, Inc. v. Assoc. Milk Producers, Inc.*, 568 F. Supp. 1096 (N.D. Ill. 1983) ......................................................................................... 22

*Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, No. 12 Civ. 895, 2013 U.S. Dist. LEXIS 91486 (S.D.N.Y. June 25, 2013) .............................................. 8

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................ 10

*Record Club of Am., Inc. v. United Artists Records, Inc.*, 611 F. Supp. 211 (S.D.N.Y. 1985) ......................................................................................... 18

*Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481 (2d Cir. 1999) ................ 20

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank*, 68 F.3d 1478 (2d Cir. 1995) ............. 20

*Rite Aid Corp. v. Am. Express Travel Related Servs. Co., Inc.*, 708 F. Supp. 2d 257, 268 (E.D.N.Y. 2010) ............................................................................. 11, 15, 18

*RSUI Indem. Co., Inc. v. Vision One, LLC*, No C08-1386RSL, 2009 U.S. Dist. LEXIS 118425 (W.D.Wash. Dec. 18, 2009) ............................................................ 8

*Shane v. Humana, Inc.*, No. 00-MD-1334-MORENO, 2009 U.S. Dist. LEXIS 130941 (S.D. Fla. Nov. 5, 2009) .................................................................. 19

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 218 (3d Cir. 2008) ........................................................................................ 17, 20

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998) ................................ 10

*United States v. Stauffer Chem. Co.*, 464 U.S. 165 (1984) ............................................ 8

*Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013) ........................ 10, 12

*VKK Corp. v. Nat'l Football League*, 244 F.3d 114 (2d Cir. 2001) ............................. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............... passim

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) .................................................. 10

*Willsea v. Theis*, No. 98-Civ.-6773, 1999 U.S. Dist. LEXIS 22471 (S.D.N.Y. Aug. 6, 1999) ........................................................................................................................ 18

*Wolson v. Reed Elsevier Inc.*, No. 09 Civ. 4040 (DC), 2010 U.S. Dist. LEXIS 7533 (S.D.N.Y. Jan. 29, 2010) ........................................................................................ 13

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 13

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 4, 5, 12

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 4, 5

## OTHER AUTHORITIES

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:53, at 167 ........... 10

<u>**PRELIMINARY STATEMENT**</u>

This case arises from anticompetitive conduct by Defendants since January 1, 2004, and the billions of dollars of damages that Defendants' conduct has inflicted on the Target Plaintiffs.[1] Defendants now move to dismiss the Complaint based solely on one argument—that a release entered in a class action that was resolved in 2003, and that specifically applies only to "conduct prior to January 1, 2004," somehow bars claims that did not accrue until years later.

This Court should deny that motion for four reasons. First, the district court and the Second Circuit already have declared the release in question to have no application to post-2003 conduct, and Defendants are bound by those determinations.  Second, the notice provided in the prior class action failed to advise class members that the release would or could purportedly bar claims arising from post-2003 conduct; therefore the release cannot be applied to claims arising from such conduct as a matter of due process.  Third, given the Complaint's allegations that address post-2003 conduct, the release issue is not suitable for decision on a motion to dismiss. Finally, if this Court concludes that it needs to construe anew the temporal scope of the release on a motion to dismiss, it should find that the release does not apply to post-2003 conduct.

The real purpose of Defendants' ill-founded motion to dismiss is clear:  Defendants hope to achieve delay by invoking the release and a related class action settlement provision to obtain a stay while another judge construes the scope of the release.  This Court should reject that effort, deny the motion to dismiss, and allow this case to proceed so that the Target Plaintiffs may promptly pursue their claims arising from Defendants' violations of the antitrust laws.

---

[1] The "Target Plaintiffs" are Target Corp., Macy's, Inc., Kohl's Corp., The TJX Cos., Inc., Staples, Inc., J.C. Penney Corp., Inc., Office Depot, Inc., L Brands, Inc., Big Lots Stores, Inc., PNS Stores, Inc., C.S. Ross Co., Closeout Distribution, Inc., Ascena Retail Group, Inc., Abercrombie & Fitch Co., OfficeMax Inc., Saks Inc., The Bon-Ton Stores, Inc., Chico's FAS, Inc., Luxottica U.S. Holdings Corp., American Signature, Inc., and their subsidiaries and affiliates, as set forth in the Target Plaintiffs' Complaint.

## FACTUAL BACKGROUND

**I.      The *Visa Check* Settlement**

In 1996, Visa and MasterCard were sued in a class action alleging federal antitrust

violations, including claims related to certain interchange fees and card-acceptance rules.  *See In*

*re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 507 (E.D.N.Y. 2004)  ("*Visa*

*Check*"), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

The class action ended in two settlements, which released Visa and MasterCard from

> all manner of claims . . . relating in any way to *conduct prior to January 1, 2004*
> *concerning any claims alleged in the Complaint or any of the complaints*
> *consolidated therein,* including, without limitation, claims *which have been*
> *asserted or could have been asserted in this litigation* which arise under or relate
> to any federal or state antitrust, unfair competition, unfair practices, or other law
> or regulation, or common law, including, without limitation, the Sherman Act, 15
> U.S.C. § 1.

Settlement Agreement ¶ 28, *Visa Check*, No. 96-CV-5238 (E.D.N.Y. June 6, 2003), ECF No.812

("Visa Settlement") (emphasis added) (attached as Ex. A); Settlement Agreement ¶ 30, *Visa*

*Check*, No. 96-CV-5238 (E.D.N.Y. June 6, 2003) ("MasterCard Settlement") (emphasis added)

(attached as Ex. B).[2]  The settlements also permitted Visa and MasterCard to seek a stay if they

later raised the release as a defense.  Visa Settlement ¶ 39(b); MasterCard Settlement ¶ 41(b).

The "short form" notice to the class in *Visa Check* did not mention the release, and the

"long form" notice simply quoted the release language.  *See* Notice of Settlement of Class

Action, No. CV-96-5238 (E.D.N.Y. July 11, 2003) (long form) (attached as Ex. C); Visa

Settlement Ex. B, Legal Notice of Class Action Settlement (short form) (attached as Ex. D).

---

[2] The class in *Visa Check* included all persons and businesses that accepted Visa- and/or
MasterCard-branded credit or debit cards between October 25, 1992 and June 21, 2003.  Visa
Settlement ¶ 1(c)-(e); MasterCard Settlement Agreement ¶ 1(c)-(e).

The district court approved the settlements on December 19, 2003, stating that the release barred only "claims arising out of the conduct at issue in the action prior to January 1, 2004." *Visa Check*, 297 F. Supp. 2d at 508. The Second Circuit affirmed. *See Wal-Mart*, 396 F.3d at 124. In holding that the settlement was fair and that class members were adequately represented, it found that "[c]onduct occurring after December 31, 2003 is not precluded from being the subject of a future suit." *Id.* at 110. Both the lower court and the appeals court therefore specifically declared based on the unambiguous language of the release that claims based on conduct that occurred *after* December 31, 2003 are not subject to the release.

## II.    Proceedings In The *Payment Card* Case

In 2005, new lawsuits challenging Visa's and MasterCard's competitive restraints were filed and consolidated in MDL 1720. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2008 WL 115104, at *1 (E.D.N.Y. Jan. 8, 2008) ("*Payment Card*"). Visa and MasterCard promptly moved to dismiss the claims in those cases that sought damages for increases in interchange rates that took effect *before* January 1, 2004 on the ground that such claims had been released in *Visa Check*. *See id.* at *6. In analyzing the applicability of the release to pre-2004 interchange fee increases, the court stated:

> it is entirely plausible that the attorneys representing the *Visa Check* class plaintiffs . . . concluded after a cost-benefit analysis that the worst-case scenario—a rise in credit transaction interchange fees that would wipe out much of the benefit to the class *but would presumably be subject to renewed litigation starting in 2004 if continued in effect*—was sufficiently unlikely to persuade them not to give up the certain benefits of the proposed Settlement.

*Id.* at *14. (emphasis added).[3]

---

[3] In the oral argument on their motion to dismiss claims asserting pre-2004 injuries based on the *Visa Check* release, counsel for Defendants stated that he was not taking the "extreme position" that Defendants "could engage in price fixing in 2 - - we can start this [in] 2003 and because we start this [in] 2003 we get immunity for continuing illegal conduct in 2004, 5, and 5 [sic]. I

Notably, Defendants did *not* promptly move to dismiss claims for damages for post-2003 interchange fee increases or move to stay such claims under the *Visa Check* settlement.  Instead, they endured years of discovery and spent millions on defense before moving to dismiss post-2003 damages claims on the basis of the release.  *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 7-8, ECF No. 86 ("Defs.' Br.").  Still later, without obtaining a ruling on the motion or seeking a stay, Defendants agreed to pay more than $7 billion to settle the post-2003 class claims.

In November 2012, Judge Gleeson preliminarily approved two settlement classes under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).  The *Payment Card* settlement agreement expressly stated that the two classes would release all claims arising *in the future* from a broad range of MasterCard and Visa rules and activities, give covenants not to sue, and be enjoined from bringing such lawsuits.  Definitive Class Settlement Agreement ¶¶ 33-37, 68-73, 95(j), *Payment Card*, No. 05-md-1720-JG-JO (E.D.N.Y. Oct. 19, 2012), ECF No. 1656-1 ("*Payment Card* Settlement Agreement") (attached as Ex. F).  The proposed settlement provoked thousands of objections, many of which targeted the future effect of the releases.  *See* Decl. of Alexandra S. Bernay ¶4, *Payment Card*, No. 05-md-1720-JG-JO (E.D.N.Y. Aug. 16, 2013), ECF No. 5939-2 (attached as Ex. G); Class Pls.' Reply Mem. in Further Supp. of Settlement Approval at 43 & n.30, *Payment Card*, No. 05-md-1720-JG-JO (E.D.N.Y. Aug. 16, 2013), ECF No. 5939 (attached as Ex. H).  The Target Plaintiffs opted out of the Rule 23(b)(3) class and objected to the Rule 23(b)(2) settlement, including the release and its future application.  *See* Mem. in Supp. of Objections of Absent Putative Rule 23(b)(2)  Class Members Target Corp. *et al*. to the

---

didn't mean to suggest that at all."  Tr. of Hr'g on Mot. to Dismiss at 35, *Payment Card*, No. 05-md-1720-JG-JO (E.D.N.Y. argued Nov. 21, 2006) , ECF No. 738 (attached as Ex. E). Defendants' motion to dismiss the Target Plaintiffs' claims in this case, in contrast, asserts precisely that "extreme position."

Proposed Rule 23(b)(2) Class and Rule 23(b)(2)  Settlement Agreement, *Payment Card*, No. 05-

MD-1720 (JG)(JO) (E.D.N.Y. May 27, 2013), ECF No. 2509-1 (attached as Ex. I).

### III.    The Target Plaintiffs' 2013 Opt-Out Complaint Makes Allegations And Seeks Damages For Visa's And MasterCard's Post-2003 Conduct

After opting out of the Rule 23(b)(3) class in *Payment Card*, the Target Plaintiffs filed

this case alleging post-2003 violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, by Visa

Inc., Visa U.S.A., Inc., Visa International Service Association, MasterCard International

Incorporated, and MasterCard, Incorporated.  Compl., May 23, 2013, ECF No. 1.  The

Complaint alleges that Defendants increased interchange fees after 2003, evidencing repeated,

further price-fixing.  *See id.* ¶¶  8-10, 59, 75, 112, 141, 152, 164, 175.   The Complaint also

addresses Defendants' corporate restructurings, which occurred *after* 2003 and created new

vehicles for implementation of competitive restraints, and further alleges that, since 2003,

Defendants have promulgated new rules—and revised and enforced prior rules—so as to further

expand their market power and ability to restrict competition in the payment card industry.  *See

id.* ¶¶ 58-60, 62, 89, 95, 145, 151, 157, 168.  Finally, the Complaint explicitly seeks damages for

conduct that occurred *after* 2003.  *Id*. ¶¶ 115-31.

## ARGUMENT

Defendants' motion raises only one argument.  It asserts that the *Visa Check* release bars

*Visa Check* class members, *in perpetuity*, from bringing claims that have any connection to Visa

or MasterCard network rules in existence prior to January 1, 2004, regardless of when the

Defendants actually engaged in anticompetitive conduct or when companies like the Target

Plaintiffs were damaged by that conduct.  *See* Defs.' Br. at 11-12.  Defendants thus assert that,

even though Visa and MasterCard have changed their corporate forms, modified their rules, and

raised their fees and penalties to levels that have inflicted new injuries and created new claims

since 2003, the dead hand of the *Visa Check* release forever prevents the Target Plaintiffs from obtaining redress. That argument is nonsense, and this Court should reject it.

**I.     The Courts Construing The *Visa Check* Release Have Judicially Determined That The Release Does Not Apply To Claims Based On Post-2003 Conduct**

Defendants' description of *Visa Check*, *see* Defs.' Br. at 3-6, never mentions the most important fact about the release in that case—namely, that both the district court and the Second Circuit addressed the temporal scope of the release and stated that it does *not* bar claims arising from post-2003 conduct. As a result, this Court does not need to construe the terms of the *Visa Check* release. Instead, it need only follow those cases and deny Defendants' motion to dismiss.

The district court in *Visa Check* stated that the release barred only those "claims arising out of the conduct at issue in the action prior to January 1, 2004." *Visa Check*, 297 F. Supp. 2d at 508. On appeal, the Second Circuit agreed that "*[c]onduct occurring after December 31, 2003 is not precluded from being the subject of a future suit*" and added that the class representatives "did not agree to preclude lawsuits arising out of similar conduct in the future." *Wal-Mart*, 396 F.3d at 110, 113 (emphasis added). These declarations, issued in an action in which Defendants fully participated as litigants, estop Defendants from arguing that the release applies to conduct occurring after December 31, 2003, regardless of whether the issue is analyzed under the doctrine of collateral estoppel or judicial estoppel.

Collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (citations omitted). Judicial estoppel, on the other hand, applies when: (1) "a party's new position is clearly inconsistent with its earlier position"; (2) "the party

6

seeking to assert this new position previously persuaded a court to accept its earlier position"; and (3) "the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (internal quotation marks omitted); *see New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  Because judicial estoppel is designed to safeguard the integrity of the judicial process, it applies only in "situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Intellivision*, 484 F. App'x at 619.

In their appeal of the order approving the *Visa Check* settlement, objectors raised due process arguments about the scope of the release and whether class members were adequately represented.  *See* Br. for Objectors-Appellants Reyn's Pasta Bella, LLC, *et al.*, *Wal-Mart Stores*, 396 F.3d 96 (2d Cir. 2005) (Nos. 04-03440-cv, 04-1052-cv, 04-1055-cv, 04-2105-cv), 2004 U.S. 2d Cir. Briefs LEXIS 344, at *25.  The class representatives argued that "the scope of the releases are limited in time to December 31, 2003 [and] no class member will be barred from suing Visa and MasterCard for activity related to this case which is engaged in by defendants after that date."  Br. of Appellees/Class Representatives in Resp. to Br. of  Appellants Reyn's Pasta Bella, *et al*., *Wal-Mart Stores*, 396 F.3d 96 (2d Cir. 2005) (Nos. 04-3440-cv, 04-1052-cv, 04-1055-cv, 04-2105-cv), 2004 U.S. 2d Cir. Briefs LEXIS 45, at *31.  In other words, class members remained "free to sue over conduct engaged in by defendants after January 1, 2004 that is related to the conduct at issue in *In re Visa Check*."  *Id.* at *26.  Along similar lines, Visa and MasterCard asserted that the release was "no broader than the effect of *res judicata*," which would bar "price-fixing claims based on Visa's and MasterCard's conduct *prior to January 1, 2004*" even in the absence of a coextensive release.  Corrected Answering Br. of Appellees-Resp'ts Visa U.S.A., Inc. and MasterCard Int'l Inc., *Wal-Mart Stores*, 396 F.3d 96 (2d Cir. 2005)

(Nos. 04-3440-cv, 04-1052-cv, 04-1055-cv, 04-2105-cv), 2004 2d Cir. Briefs LEXIS 46, at *31 n.11 (emphasis added) ("Defs.' Answering Br.").[4]

Based on these arguments, the Second Circuit concluded that class representatives "did not agree to preclude lawsuits arising out of similar conduct in the future," *Wal-Mart*, 396 F.3d at 113, and that "[c]onduct occurring after December 31, 2003 is not precluded from being the subject of a future suit." *Id.* at 110.  These findings on the temporal scope of the release were integral to the Court's holdings that the objectors were adequately represented and that due process did not prevent application of the release to pre-2004 claims.  The Second Circuit, thereby, resolved the issue at the core of Defendants' current motion to dismiss, and Defendants are precluded from relitigating it here.  *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984) (collateral estoppel "preclude[s] relitigation of both issues of law and  issues of fact if those issues were conclusively determined in a prior action"); *see also Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, No. 12 Civ. 895, 2013 U.S. Dist. LEXIS 91486, at *32, n.6 (S.D.N.Y. June 25, 2013) (discerning a "serious argument" that a party would be judicial estopped from advancing a position in subsequent litigation that was inconsistent from the position taken in a prior, settled class action); *RSUI Indem. Co., Inc. v. Vision One, LLC*, No C08-1386RSL, 2009 U.S. Dist. LEXIS 118425, *8 (W.D. Wash. Dec. 18, 2009) (noting defendants' assertion of a particular denial-of-coverage date to support their argument that a prior state court settlement was reasonable, and concluding that "[h]aving relied on that fact to obtain a reasonableness determination in state court, defendants are now judicially estopped from taking a contrary position"); *cf. Best Foods Int'l, Inc. v. Aerojet-Gen. Corp.*, Nos. 1:89-cv-503,

---

[4] As the Defendants have pointed out, the Court may, on a motion to dismiss, take judicial notice of public records and court filings.  *See* Defs.' Br. at 4 n.2.  This includes the transcripts, testimony, and opinions in prior proceedings.  *See Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 338 (S.D.N.Y. 2005).

8

1:89-cv-961, 2000 U.S. Dist. LEXIS 12712, *28 (W.D. Mich. Aug. 24, 2000) ("[W]here the court has approved a settlement based on a determination that the settlement is fair and equitable, . . . such approval amounts to judicial acceptance triggering judicial estoppel.").

Defendants now seek a result that is contrary to both their own prior arguments and the conclusions of the courts that relied on these argument to reach conclusions Defendants desired. In the *Visa Check* proceedings, the Second Circuit clearly embraced Defendants' position that the release applied only to "price-fixing claims based on Visa's and MasterCard's conduct prior to January 1, 2004." Defs.' Answering Br. at *31 n. 11.  Defendants cannot be permitted to reverse course now.  *Jasper v. Sony Music Entm't, Inc*, 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) (noting that judicial estoppel prevents assertion of  position contrary to that taken in prior lawsuit so as "to protect the integrity of the judicial process and to prevent parties from playing 'fast and loose' with the courts").

In short, the issue raised by Defendants' motion to dismiss has already been resolved. The courts evaluating the *Visa Check* release as part of their review of the settlement's fairness found that "[c]onduct occurring after December 31, 2003 is not precluded from being the subject of a future suit."  *Wal-Mart*, 396 F.3d at 110.  Those determinations are binding, and this Court should not revisit them.  Because the *Visa Check* release does not apply to post-December 31, 2003 conduct, Defendants' motion to dismiss on the basis of that release should be denied.

**II.    Because *Visa Check* Class Members Had No Notice Of The Defendants' Forward-Looking Interpretation Of The Release, An Interpretation Of The Release That Bars Post-2003 Claims Would Violate Due Process**

Even if Defendants were not estopped from asserting that the *Visa Check* release covers post-2003 conduct such as that alleged in this case, their belated and overly broad reading of the release also is barred by the Due Process Clause.  The Due Process Clause requires that class

members be given adequate notice of the terms of a class action settlement; accordingly, "[r]eleases are only enforceable to the extent of notice provided to class members." *In re Holocaust Victims Assets Litig.*, 314 F. Supp. 2d 155, 164 (E.D.N.Y. 2004).  Because the plain language of the *Visa Check* release applies only to pre-2004 conduct—a fact confirmed by the readings of that language by the Second Circuit and Judge Gleeson in their *Visa Check* rulings— this Court cannot now hold that the release bars claims arising from post-2003 conduct.

"To comport with due process, the notice provided to absent class members must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)); *see also Wal-Mart*, 396 F.3d at 114 (notice "must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982))).  "Notice is 'adequate if it may be understood by the average class member.'" *Wal-Mart*, 396 F.3d at 114 (quoting 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:53, at 167).

When a notice fails to indicate the full scope of the claims released or is ambiguous with respect to the release's subsequent application, it cannot serve as a bar to later claims.  *See Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (striking release that did not sufficiently inform class members of its effect on other related lawsuits because such release failed to identify  the "principal ground" on which class member might object to settlement); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1229 (11th Cir. 1998) (rejecting application of claim preclusion because notice was insufficient to inform plaintiff that claims akin to his were

10

part of the class claims); *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 20-21 (2d Cir. 1981) (finding notice inadequate when "[n]o one holding claims on both liquidated and unliquidated contracts would have been adequately alerted to the possibility that the latter as well as the former were being released" and therefore "[w]ith respect to claims on unliquidated contracts, the notice did not fairly apprise the . . . members of the class of the terms of the proposed settlement" (third alteration in original) (internal quotation marks omitted)); *Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV 05-6838 CAS (MANx), CV 05-8908 CAS (MANx), 2010 U.S. Dist. LEXIS 113815, at *44 (C.D. Cal. Aug. 18, 2010) (rejecting dismissal when notice of release had not informed class members of release's potential application "as to the specific claims at issue").

Here, nothing in the *Visa Check* release or class notice alerted class members to the possibility that they were releasing, *forever*, all claims relating to Defendants' rule-based competitive restraints, even though such claims cannot accrue until the challenged action causes injury. *See Rite Aid Corp. v. Am. Express Travel Related Servs. Co., Inc.*, 708 F. Supp. 2d 257, 268 n. 12 (E.D.N.Y. 2010) (in context of price fixing, new cause of action accrues each time plaintiff pays an inflated price); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000).[5] The notice simply quoted the language of the release, which in turn states that it is related to "conduct prior to January 1, 2004." The Second Circuit explicitly read that language to mean that "[c]onduct occurring after December 31, 2003 is *not precluded from being the subject of a future suit*." *Wal-Mart*, 396 F.3d at 124 (emphasis added). The Second Circuit's

---

[5] In the *Payment Card* case, Defendants' counsel recognized this principle during argument on the motion to dismiss pre-2004 claims on the basis of the *Visa Check* release and affirmed that if there were: "a continuing agreement or continuing way of doing business each time you send out the . . . each time the interchange of process after January 1, 2004, regardless of when it was put in place, it is still conduct that is causing damage if it's a product of an illegal agreement." Tr. of Hr'g on Mot. to Dismiss at 36.

unequivocal declaration as to the temporal scope of the release precludes any argument that class members should have read the release to bar claims arising from post-2003 conduct, as Defendants now contend.

If Defendants had intended to notify *Visa Check* class members of the forward-looking interpretation they now advocate, the proposed release in *Payment Card* demonstrates how they would have done so. In stark contrast to the *Visa Check* release, the *Payment Card* proposed release would apply to: "all manner of claims . . . *relating to the period after* the date of the Court's entry of the Class Settlement Preliminary Approval Order, *regardless of when such claims accrue*." *Payment Card* Settlement Agreement ¶ 68 (emphasis added). This includes:

> the *future effect* in the United States of any conduct . . . substantially similar to the conduct of any Rule 23(b)(2) Settlement Class Released Party related to or arising out of interchange rules, interchange fees, or interchange rates, . . . any other Rule . . . in effect as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, or any Rule substantially similar to any of the foregoing Rules.

*Id.* ¶ 68(h) (emphasis added).

The *Payment Card* language makes clear to putative class members that the proposed release would have forward-looking application. The *Visa Check* release, which refers to "conduct *prior to* January 1, 2004," does not. Objection and opt-out rights are meaningless if notice to class members leaves them unaware that their rights have been impaired and thereby denies them any real opportunity to object. *See Vassalle*, 708 F.3d at 759 n.2 (stating that right to opt out is "illusory" when notice failed to inform class members "of their most significant ground of objection"); *cf. Nat'l Super Spuds*, 660 F.2d at 16 (lack of objection "means even less when, as here, the notice of settlement did not adequately apprise class members who also held claims in respect of unliquidated contracts that these too were being placed on the block although those class members were to receive nothing in return").

12

In *Visa Check*, neither the class notices nor the release language itself gave absent class members reasonable notice that MasterCard and Visa would assert the release as grounds on which to bar claims accruing years later. The Second Circuit's clear statement about the temporal scope of the release confirms that fact. Accordingly, due process bars Defendants' attempt to apply the *Visa Check* release to claims alleged by the Target Plaintiffs in 2013, and Defendants' motion to dismiss should be denied for that reason as well.

III.    **The Application Of The *Visa Check* Release To This Case Is Not Appropriately Decided On A Motion To Dismiss**

This Court also should deny Defendants' motion because their release defense simply cannot be addressed through a motion to dismiss. *See Wolson v. Reed Elsevier Inc.*, No. 09 Civ. 4040 (DC), 2010 U.S. Dist. LEXIS 7533, at *5-6 (S.D.N.Y. Jan. 29, 2010) (declining to decide on Rule 12(b)(6) motion whether a prior class settlement released the claims in a complaint alleging infringement that continued after the effective date of the release).

Even Defendants recognize the fact-intensive nature of this inquiry. In a recent filing in the *Payment Card* case, Defendants noted the "well-established legal framework" for evaluating whether there is a "sufficient identity of issues" between a new action and a prior release. Letter from Robert J. Vizas, Counsel for the Visa Defs. and Kenneth A. Gallo, Counsel for the MasterCard Defs. to the Hon. John Gleeson at 2, *Payment* Card, No. 05-md-1720-JG-JO (E.D.N.Y. Sept. 4, 2013, ECF No. 5976 (attached as Ex. J). They explained that "the court would look to factors that include the *identity and scope of the issues in the prior case*, the *rights that would have been determined* had the original case been tried, whether the release of the new claim was *reasonably foreseeable*, and whether application of the release would present a situation *sufficiently analogous to the claims that were or could have been asserted in the*

13

*original action*." *Id.* (emphasis added).  These are questions that cannot be resolved on a motion to dismiss; they can be resolved only on summary judgment or at trial.

There are other factual questions beyond those that Defendants identify.  The *Visa Check* release applies only to members of the *Visa Check* class, which was limited to persons and businesses that accepted Visa or MasterCard between October 25, 1992 and June 21, 2003.  Visa Settlement ¶ 1(c)-(e); MasterCard Settlement ¶ 1(c)-(e).  Twenty-four of the Target Objectors[6] were not formed until after June 21, 2003, and thus are not subject to the *Visa Check* release.

Similarly, the Complaint explicitly addresses many activities that occurred *after* January 1, 2004, including Defendants' corporate restructurings in 2006 and 2008, their promulgation of new rules, and other conduct.  *See, e.g.*, Compl. ¶¶ 8-10, 58-60, 62, 75, 89, 95, 112, 141, 145, 151-152, 157, 164, 168, 175.  Those allegations also preclude Defendants' motion to dismiss.

To survive a motion to dismiss, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court should accept factual allegations as true and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 846 (2013).  "Because plausibility is a standard lower than probability, a given

---

[6] These plaintiffs are: Bath & Body Works Direct, Inc.; Charming Shoppes Outlet Stores, LLC; Air Sun Freight, Inc. dba Sun Air Freight; J.M. Hollister, LLC; Gilly Hicks, LLC; Kohl's Value Services, Inc.; Outlet Division Store Co. Inc.; Carson Pirie Scott II, Inc.; The Door Store, LLC; Saks Fifth Avenue Texas, LLC; Oakley Air Sunglass Hut Trading, LLC; Bloomingdale's The Outlet Store, Inc.; Luxottica North America Distribution LLC; Newton Buying Company of CA, Inc.; SCCA Store Holdings, Inc.; Saks Direct, LLC; Eye Exam of California, Inc. (Corte Madera); Ascena Retail Group, Inc.; Lunettes California, Inc.; Victoria's Secret Stores Puerto Rico, LLC; Eye Exam of California, Inc. (Pleasant Hill); TCC Cooking Co.; Rays Houston; and Soma Intimates, LLC f/k/a Soma By Chico's.

set of actions may well be subject to diverging interpretations, each of which is plausible." *Id.* at 184. Such questions of fact "cannot be resolved on the pleadings." *Id.* at 185.

The Complaint in this case easily meets this standard because it alleges that Defendants have engaged in new price-fixing by regularly adopting interchange fee schedules *after* December 31, 2003. *See, e.g.*, Compl. ¶¶ 9-10 (alleging that interchange rates continued to increase after the 2003 class settlement and a 2008 Justice Department investigation); *id.* ¶ 59 ("Visa and MasterCard have continued to set 'default' interchange fees for the benefit of their issuing bank members" following their 2008 and 2006 initial public offerings); *id.* ¶ 75 ("Visa and MasterCard each have established complex 'default interchange fee schedules.' In setting the interchange fees that are paid to their member banks, Visa and MasterCard each acts as the manager of its respective combination, setting the price that merchants pay for acceptance."); *id.* ¶ 112 ("Since 2004, Plaintiffs' total interchange fees paid on transactions utilizing cards issued by members of Visa and MasterCard have risen faster than the rate of increase in retail sales.").

As the Court in *Payment Card* observed, "[a] card network's decision to charge a higher (or lower) interchange fee must to some extent be ratified with each new transaction—it is always, at least in theory, subject to renegotiation absent an exercise of bargaining power, licit or otherwise, that artificially keeps the subject off the table." *In re Payment Card*, 2008 WL 115104, at *14; *see Rite Aid Corp.*, 708 F. Supp. 2d at 268 & n. 12 (E.D.N.Y. 2010); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 192 (S.D.N.Y. 2000). Thus, each time a Target Plaintiff accepted a payment card and was charged a new, collectively-set interchange fee, another claim of anticompetitive conduct arose that is not covered by the *Visa Check* release.

The Target Plaintiffs also allege that since January 1, 2004, Defendants have continued to promulgate and enforce competitive restraints through frequently updated operating regulations

15

and interchange rate tables.  Compl. ¶¶ 59-60 (noting continued actions to impose and enforce Competitive Restraints); ¶ 89 ("In addition to the Competitive Restraints, a variety of other rules and regulations (often not publicly disclosed) enforced by Visa and MasterCard and their member banks also operate to support the anticompetitive effects of the Competitive Restraints and imposition of 'default' interchange fees on Plaintiffs.").  Claims relating to this additional post-2003 conduct also are not extinguished by the *Visa Check* release.

In addition, the changes in MasterCard's and Visa's ownership structures in 2006 and 2008, respectively, precipitated additional action to ensure that Defendants' market power remained intact.  As MasterCard publicly admitted, the purpose of its initial public offering was to limit potential legal and regulatory challenges resulting from the prior governance structure, which was driven by competing member banks.  Compl. ¶ 58.  The fact of the restructuring and its expressed purpose constitute still more post-2003 conduct.  (Of course, it also is hardly likely that Defendants would have spent the money and endured the disruption necessary to restructure their entire businesses if they actually believed they already had secured a release of all claims arising from their continuing anticompetitive conduct  through the *Visa Check* settlement.)

The Complaint further alleges that Defendants engaged in post-2003 conduct by acting as managers of combinations after the initial public offerings ("IPOs").  *See* Compl. ¶ 60 (Defendants "act[ed] as managers of their respective combinations and coordinat[ed] agreements [with issuing banks] to continue imposing and adhering to the Competitive Restraints"); *id.* ¶ 62 ("[A]fter the Visa and MasterCard IPOs, the member banks have ceded to Visa and MasterCard decision-making and action with respect to the terms upon which they will allow merchants to accept the cards they issue"); *id.* ¶ 95 ("Visa promulgates and enforces the Competitive Restraints, which prevent competition among its issuing banks for merchant acceptance."); *id.* ¶

16

101 ("MasterCard also promulgates and enforces the Competitive Restraints, which prevent competition among its issuing banks for merchant acceptance."); *id.* ¶¶ 134, 145 ("Visa's Competitive Restraints . . . constitute horizontal agreements among Visa and its members both prior to and after Visa's reorganization and IPO."); *id.* ¶¶ 157, 168 ("MasterCard's Competitive Restraints . . . constitute horizontal agreements among MasterCard and its members both prior to and after MasterCard's IPO.").

In arguing that claims based on these allegations should be dismissed, Defendants conflate new conduct that is comparable to, but distinct from, past behavior with injuries arising out of continued adherence to a prior act.  That some variation of the merchant restraints and rules may have been in place before 2004 does not support classifying the Target Plaintiffs' allegations as mere continuing conduct, nor does it prevent those rules and policies from supporting allegations of post-2003 wrongdoing.  *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 218 & n.9 (3d Cir. 2008) (observing that there is no authority "for the proposition that a release prevents a party from relying on events that occurred prior to the signing of the release to establish facts necessary to show a continuing conspiracy"); *cf. Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 421 F.2d 1313, 1318 (5th Cir. 1970) (holding that "significant actions (or non actions)" after an earlier judgment, "either alone or in combination with acts which have been completed prior to [that judgment] . . . may be the basis for new claims for damages traceable to such significant actions").

This fundamental misperception of the Target Plaintiffs' allegations renders all of the Defendants' cited cases distinguishable.  For example, in *Madison Square Garden, L.P. v. National Hockey League*, No. 07-CV-8455, 2008 U.S. Dist. LEXIS 80475, at *18-19 (S.D.N.Y. Oct. 10, 2008) ("*MSG*"), the anticompetitive policies that restricted individual NHL clubs'

17

licensing, advertising, and broadcasting rights already existed at the time of the release, and no

new claims based on post-release anticompetitive conduct had accrued.  The court explicitly

distinguished that scenario from cases such as this one, which are based on "subsequent conduct

by the defendant that goes beyond what was released in the first instance." *Id.* at *28.   Unlike in

*MSG*, the antitrust claims that the Target Plaintiffs assert—such as allegations that the

Defendants engaged in new price-fixing each time they reset the default interchange fee—could

not have existed at the time of the release and thus would not be barred under *MSG*'s reasoning.

*Cf. Rite Aid Corp.*, 708 F. Supp. 2d at 270 (classifying increases to American Express's merchant

discount fee as "new and independent acts").

   *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 125 (2d Cir. 2001), also is

inapplicable because it involved a challenge to the release itself, with the court rejecting the

plaintiffs' argument that the release should be voided under the "part and parcel" doctrine.  The

dicta on which the Defendants rely says nothing about how the release would have applied to

new anticompetitive conduct that occurred after the release date.  *See id.* at 126.[7]

---

[7] Defendants' remaining cases are inapplicable for the same reason: all involved challenges to
conduct that occurred (and claims that accrued) before the date of the release.  *See, e.g.*, *Crivera
v. City of New York*, No. 03 CV 447, 2004 U.S. Dist. LEXIS 2571, at *7-8, *11-12 (E.D.N.Y.
Feb. 23, 2004) (barring sexual harassment and discrimination claims based on conduct that
preceded the divorce settlement release); *Willsea v. Theis*, No. 98-Civ.-6773, 1999 U.S. Dist.
LEXIS 22471, at *9, *39 (S.D.N.Y. Aug. 6, 1999) (finding claims that previously existed and
could have been brought as counterclaims in the earlier action were barred by the release);
*Hunter Douglas, Inc. v. Comfortex Corp.*, No. 98-CV-0479, 1999 U.S. Dist. LEXIS 10906, at
*21 (N.D.N.Y. Mar. 11, 1999) (barring subsequent challenge to the same allegedly
anticompetitive policy because any claims the plaintiff had relating to that policy had already
accrued as of date of release); *Record Club of Am., Inc. v. United Artists Records, Inc.*, 611 F.
Supp. 211, 217 n.8 (S.D.N.Y. 1985) (barring claim arising from an allegedly anticompetitive
agreement when the "plaintiff's cause of action arose before the release was signed"); *see also
MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 161 F.3d 443, 448 (7th Cir. 1998)
(affirming application of release to claims "clearly based on pre-[release] conduct" when no facts
supported that the defendants had engaged in post-release conduct that so much as reaffirmed
their prior anticompetitive agreement); *Shane v. Humana, Inc.*, No. 00-MD-1334-MORENO,

Taking the Target Plaintiffs' allegations as true—as the Court must—the face of the complaint alleges post-2003 conduct not subject to the release. *Cf. Exhibitors*, 421 F.2d at 1318-19 (on motion to dismiss, district court may conclude that complaint "adequately allege[s] that there has been new illegal conduct, not merely continuing damages from old, and now insulated, illegal conduct, in violation of the antitrust laws and therefore stating a claim upon which relief can be granted"). There is no basis for this Court to conclude, solely on the pleadings, that every instance of post-2003 conduct alleged in the Complaint is "relat[ed] . . . to conduct prior to January 1, 2004" within the meaning of the *Visa Check* release and thus that the allegations are even arguably implicated by the release. Defendants' motion should be denied because the issue it raises simply is not capable of being decided on a motion to dismiss.

### IV.   The *Visa Check* Release Cannot Be Read To Provide Perpetual Immunity From Future Claims Of Anticompetitive Conduct That Accrued After December 31, 2003

For all of the reasons above, there is no need for this Court to construe the language of the *Visa Check* release in the context of this motion to dismiss. Even if this Court were to examine the release language, however, it would conclude that the release does not apply to the post-December 31, 2003 conduct that is the focus of the Target Plaintiffs' Complaint.

The latter point is readily established. Although Defendants appear to be confused about whether the Target Plaintiffs' assert claims for pre-2004 damages, *see* Defs.' Br. at 10-11, their confusion is entirely self-generated. The Target Plaintiffs' Complaint clearly seeks redress for injury only "[f]rom 2004 to the present." Compl. ¶¶ 115-31.

Equally clearly, the *Visa Check* release applies *only* to claims that arose out of pre-2004 conduct. The interpretation of a release is governed by ordinary contract principles and the

_____

2009 U.S. Dist. LEXIS 130941, at *54 (S.D. Fla. Nov. 5, 2009) (applying release to claims "based on conspiratorial conduct and 'chain of events' that took place long before the execution and approval of these settlement agreements").

19

meaning of an unambiguous contract is a question of law.  *See Golden Pac. Bancorp v. FDIC*,

273 F.3d 509, 515 (2d Cir. 2001).  In construing a contract, the Court is "bound, first and

foremost, by the terms' plain meaning."  *Bank of N.Y. Trust Co. v. Franklin Advisers, Inc.*, --

F.3d ---, 2013 U.S. App. LEXIS 15819, at *22 (2d Cir. Aug. 1, 2013) (applying New York law).[8]

"If a contract is clear, courts must take care not to alter or go beyond the express terms of the

agreement, or to impose obligations on the parties that are not mandated by the unambiguous

terms of the agreement itself."  *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481,

484 (2d Cir. 1999).

When evaluating the scope of a release, courts consistently distinguish between pre- and

post-effective-date conduct, even when the later conduct resembles the claims that were subject

to the initial release.  *See, e.g.*, *Remington Rand Corp. v. Amsterdam-Rotterdam Bank*, 68 F.3d

1478, 1485 (2d Cir. 1995) ("Although the releases shield the [defendants] from liability for any

conduct through their effective dates, they do not protect the [defendants] from liability arising

from any subsequent wrongful conduct."); *see also Toledo Mack Sales*, 530 F.3d at 210 n.2, 218

n.9 (holding that release of "all claims . . . arising out of or in connection with" a prior antitrust

suit "[did] not apply to claims for antitrust damages based on events which occur after the

execution of the release"); *Mkt'g Assistance Plan, Inc. v. Assoc. Milk Producers, Inc.*, 338 F.

Supp. 1019, 1021-23 (S.D. Tex. 1972) (holding that release of "all claims . . . which were or

could have been asserted in [this] action or growing out of or in any way connected with the

matters and issues therein involved" could not "settle disputes which had not yet arisen" or "bar

the assertion . . . of any post-release causes of action for damages caused by renewed

---

[8] New York law governs the interpretation of the *Visa Check* settlement and release.  *See* Visa
Settlement ¶ 38; MasterCard Settlement ¶ 40.

monopolistic activities by the defendants"). Claims arising from new, post-settlement conduct thus are not barred by a prior release involving similar claims.

Adopting the Defendants' expansive interpretation of the *Visa Check* release would far exceed the express terms of the settlement—a result that is impermissible under basic principles of contract law. By its terms, the release covers "claims . . . relating in any way to *conduct prior to January 1, 2004*," Visa Settlement ¶ 28 (emphasis added); MasterCard Settlement ¶ 30, (emphasis added), thereby placing a clear temporal limit on the scope of released claims. The Defendants' interpretation of this language as releasing newly-accrued claims in perpetuity reads that limitation out of the release and thus violates the fundamental maxim that courts must construe a contract to give each term meaning and avoid a construction that makes any term superfluous. *See Bank of N.Y. Trust Co.*, 2013 U.S. App. LEXIS 15819, at *17 (citing *Brooke Group Ltd. v. JCH Syndicate* 663 N.E.2d 635, 637 (N.Y. 1996); *In re OnBank & Trust Co.*, 688 N.E.2d 245, 247, (N.Y. 1997)). Moreover, reading the *Visa Check* release, consistent with its plain meaning, to *not* apply to future claims arising from the future effect of post-2003 conduct is amply supported by the district court and Second Circuit interpretations of the release in the *Visa Check* action, discussed above.

That reading also is supported by a comparison of the *Visa Check* release to the explicit forward-looking language of the proposed release in the *Payment Card* litigation, also discussed above. Indeed, unlike the proposed *Payment Card* release, the *Visa Check* release says nothing about barring claims involving the future *effect* of Defendants' conduct. To the contrary, the *Visa Check* release only refers to "any claims *alleged in the Complaint* or any of the complaints consolidated therein, including, without limitation, claims *which have been asserted or could have been asserted in this litigation*." Visa Settlement ¶ 28; MasterCard Settlement ¶ 30

21

(emphasis added).  That language is backward-looking, not forward-looking, and further establishes that the plain meaning of the release reaches only claims arising from conduct occurring before January 1, 2004, precisely as the district court and the Second Circuit declared.

Furthermore, Defendants' proposed interpretation flies in the face of public policy that proscribes any construction of a release that would confer indefinite prospective antitrust immunity.  *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955) (indicating that to "in effect confer [on the defendants] a partial immunity from civil liability for future [antitrust] violations . . . is consistent with neither the antitrust laws nor the doctrine of res judicata"); *see also Ital. Colors Rest. v. Am. Express Travel Related  Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300, 319 (2d Cir. 2009) ("[A]n agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy."), *vacated on other grounds by* 559 U.S. 1103 (2010); *Flying J Inc. v. TA Operating Corp.*, No. 1:06-CV-30-TC, 2008 U.S. Dist. LEXIS 92852, at *12 (D. Utah Nov. 14, 2008) (stating that release of post-settlement conduct would constitute a prospective release of antitrust claims and "would be void as against public policy"); *Hunter Douglas*, 1999 U.S. Dist. LEXIS 10906, at *21 & n.10 (concluding that release barred already accrued claims but recognizing that it would be against public policy "to release antitrust claims not in existence at the time the release is executed"); *Oberweis Dairy, Inc. v. Assoc. Milk Producers, Inc.*, 568 F. Supp. 1096, 1100, 1101 (N.D. Ill. 1983) (holding that release that purported to extinguish both prior claims of anticompetitive conduct and claims that would arise "if the parties continued to engage in those practices in the future" was unenforceable as a matter of public policy).  For that reason as well, this Court should hold that the *Visa Check* release does not apply to allegations of conduct occurring after December 31, 2003.

## CONCLUSION

The Court need not construe the *Visa Check* release because it already has been conclusively construed by the *Visa Check* courts, which held that it does not "preclude lawsuits arising out of similar conduct in the future." *Wal-Mart*, 396 F.3d at 113. That determination is dispositive and requires denial of Defendants' motion to dismiss. Defendants' motion also fails because applying the release to bar claims arising from post-2003 conduct would violate due process, because the release question cannot be resolved on a motion to dismiss, and because the *Visa Check* release, by its terms, does not apply to post-2003 conduct. For all of these reasons, this Court should deny Defendants' motion to dismiss.

DATED:  September 27, 2013

CLARICK GUERON REISBAUM LLP


By:  /s/ Gregory A. Clarick
          Gregory A. Clarick
          Nicole Gueron
          Isaac Zaur
          40 West 25th Street
          New York, New York 10010
          (212) 633-4310

VORYS, SATER, SEYMOUR AND PEASE LLP

          Michael J. Canter
          Robert N. Webner
          James A. Wilson
          Douglas R. Matthews
          Kimberly Weber Herlihy
          Alycia N. Broz
          Kenneth J. Rubin
          52 East Gay Street
          Columbus, Ohio 43215
          (614) 464-6600

          *Attorneys for Plaintiffs*